UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
<u>                              </u>

AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES (AKA AFSCME),
LOCAL 264, AFSCME LOCAL 650, AFSCME LOCAL
2651, INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 17, and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 264,

                               Plaintiffs,
    v.                                               **DECISION AND ORDER**
                                                                04-CV-753S

RICHARD TOBE, THOMAS E. BAKER, ALAIR
TOWNSEND, H. CARL McCALL, JOHN J. FASO,
JOEL A. GIAMBRA, ANTHONY M. MASIELLO,
RICHARD A. STENHOUSE and ROBERT G.
WILMERS, *in their official capacities as directors/
members of the Buffalo Fiscal Stability Authority*,

                               Defendants.
<u>                              </u>

## I. INTRODUCTION

This is the last in a series of three actions brought in this Court by various unions representing City of Buffalo employees against members of the Buffalo Fiscal Stability Authority ("Control Board").[1]

On July 3, 2003, the New York State Legislature, through the Buffalo Fiscal Stability Authority Act ("Act"), created the Control Board to stabilize and improve the City of Buffalo's failing financial health. One of the powers the legislature vested in the Control

---

[1] The first case, Buffalo Teachers Federation v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005), is discussed below. The second, Civil Service Employees Association, Inc. v. Buffalo Fiscal Stability Authority, No. 04 Civ. 853, settled on September 8, 2008.

1

Board was the discretion to freeze wages. On April 21, 2004, the Control Board exercised that discretion and enacted Resolution No. 04-35, otherwise known as the Wage Freeze Resolution, which, for purposes of this case, had the effect of eliminating contractual salary increases that Plaintiffs had negotiated with the City of Buffalo.

Plaintiffs' suit challenges the Wage Freeze Resolution as violative of the Contract and Takings Clauses of the United States Constitution. See U.S. Const. art. I, § 10, cl. 1; U.S. Const. amend. V. Plaintiffs also claim that the wage freeze violated their rights to Equal Protection and Due Process under the Fourteenth Amendment to the United States Constitution. They bring these claims under 42 U.S.C. § 1983. Further, they argue that the Act violated Article I of the New York State Constitution and New York State's Taylor Law, which is found under New York Civil Service Law § 200 *et seq.*

Although Plantiffs jointly filed a motion for summary judgment and memoranda in support, all but one of the plaintiffs have now reached, or are close to reaching, a resolution or settlement of their claims. (See Buzzard Letter; Docket No. 117.) The remaining plaintiff is the International Brotherhood of Teamsters, Local 264 ("Local 264"). (Id.) Defendants have also moved for summary judgment. Thus, presently before this Court are Local 264's (Docket No. 41) and Defendants' (Docket No. 48) dueling Motions for Summary Judgment. For the following reasons, Local 264's motion is denied, while Defendants' motion is granted.

## II. BACKGROUND

**A.    The Parties**

Local 264 is an employee organization that serves as the exclusive bargaining

representative for the City of Buffalo Water Division employees. (Defendants' Rule 56 Statement of Undisputed Facts ("Defendants' Statement"), ¶ 6.) Defendants are directors/members of the Control Board, which is a public benefit corporation. (Id. ¶ 7, 8.)

Local 264 is a party to a collective bargaining agreement with the City of Buffalo. (Id. ¶ 10.) This agreement provides for periodic step increases and/or other types of salary increases to be paid to the covered employees.[2] (Id.)

**B.   Buffalo Teachers**

As noted above, this is the third in a series of cases concerning the Act and the effect of the wage freeze on unions within the City of Buffalo. As such, the history of the Act and accompanying wage freeze, the reasons for their enactments, and their effects have all been well documented.[3] In the first case to deal with the wage freeze, Buffalo Teachers Federation v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005) ("Buffalo Teachers"), brought by teachers and other school district employees for the City of Buffalo, this Court found that the Wage Freeze Resolution did not violate the plaintiffs' rights under the Contract or Takings Clauses. The Second Circuit affirmed this Decision and the Supreme Court denied *certiorari*. Buffalo Teachers Federation v. Tobe, 464 F.3d 362 (2d Cir. 2006), *cert. denied*, 550 U.S. 918,127 S. Ct. 2133, 167 L. Ed. 2d 864 (2007). Local 264, in this case, appears to concede that the twin Buffalo Teachers cases resolve its Contract and

---

[2] This Court notes that the agreements between Plaintiffs and the City of Buffalo have all expired and that successor agreements were not entered at the time of the filing of the Complaint. (Defendants' Statement, ¶ 11.) However, under New York's Civil Service Law, the terms of the expired agreements remain in force until new agreements are reached. See N.Y. CIV. SERV. LAW § 209-a(1)(e) (McKinney 1999); Ass'n of Surrogates & Supreme Court Reporters v. State of New York, 588 N.E.2d 51, 53 (N.Y. 1992).

[3] For a full discussion, see Buffalo Teachers Federation v. Tobe, 446 F. Supp. 2d 134 (W.D.N.Y. 2005).

Takings Clause claims in Defendants' favor. (See Issues Remaining, p. 2, ¶ 2; Docket No. 91) ("This Court's Decision in the [Buffalo Teachers] case, and its affirmance by the Court of Appeals, have resolved the issues with respect to impairment of contract rights and unlawful taking as to the Buffalo School Board employees, *and arguably may have also as to City employees*.") (Emphasis added). In that submission, Plaintiff makes no argument that the Second Circuit's holding does not apply to them as well[4], and there is no question that it should: for the purposes of the Contract and Takings Clause, the plaintiffs in Buffalo Teachers and the plaintiffs here were equally affected by the wage freeze; their claims[5], and thus the resolution of their claims, are identical. However, Buffalo Teachers did not address Local 264's Equal Protection, Due Process, and state law claims, which will be discussed in the following analysis.

**C.    Procedural History**

On September 17, 2004, Plaintiffs commenced this action by filing a Complaint in the United States District Court for the Western District of New York. (Docket No. 1.) Defendants filed their Answer on October 19, 2004 (Docket No. 12.) On June 9, 2005, Plaintiffs moved for Leave to Amend their Complaint (Docket No. 23), which, after briefing, was denied by the Honorable Leslie G. Foschio on October 4, 2005. (Docket No. 39.) Plaintiffs and Defendants moved for summary judgment on December 5, 2005 and January 20, 2006, respectively.  After full briefing on the motions, this Court held oral argument on April 23, 2008, and reserved decision at that time. (Docket No. 114.) By letter dated April

---

[4] Plantiffs only argue that Buffalo Teachers does not apply to the Buffalo Municipal Housing Authority employees. (Issues Remaining, ¶¶ 2-12.) But these employees are represented by plaintiff-unions that have settled.

[5] The Complaints contain nearly identical language, substituting only the different parties.

23, 2010, this Court was informed that all the plaintiffs except Local 264 had reached, or were close to reaching, settlement of their claims. (Docket No. 117.)

### III. DISCUSSION

**A.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.     42 U.S.C § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must allege (1) "that some person has deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state . . . law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)).

On its own, § 1983 does not provide a source of substantive rights, but rather a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Local 264's § 1983 claims arise under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**C.    Equal Protection**

It is undisputed that the Control Board did not independently review Local 264's contract before imposing a wage freeze. (Plaintiffs' Rule 56 Statement of Facts ¶ 82.) It did, however, review other contracts to which the City of Buffalo was a party. (Id. 80.) Local 264 claims that this action violated its Equal Protection rights. It contends that Defendants treated its contract summarily and therefore differently than other contracts that were

subject to review and approval.[6]

Defendants respond by arguing that the Control Board's decision was an economic classification and thus subject to rational basis review and that their actions withstand this scrutiny.

A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "At its core, equal protection prohibits the government from treating similarly situated persons differently." Sound Aircraft Servs. v. Town of East Hampton, 192 F.3d 329, 335 (2d Cir. 1999) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).

"Where governmental action implicates purely economic interests,"courts have not, since the days of the Depression, interfered with legislative judgments rationally related to a legitimate governmental objective." New York City Managerial Emps. Ass'n v. Dinkins, 807 F. Supp. 958, 965 (S.D.N.Y. 1992 ) (quoting Image Carrier Corp. v. Beame, 567 F.2d 1197, 1203 (2d Cir.1977)).

The rational basis standard has two prongs: (1) the challenged action must have a legitimate purpose and (2) it must have been reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose. W. & S. Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 668, 101 S. Ct. 2070, 2083, 68 L. Ed. 2d 514 (1981); see Lyng v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers, 485

---

[6]Local 264 characterizes its equal protection claim somewhat differently in its Complaint. (See ¶¶ 57-59.) There, it focuses on Defendants' actions in freezing its salaries, but not imposing similar restraints on other City contracts. (Id.) Perhaps recognizing the futility of that argument, it shifts positions in its memoranda and focuses exclusively on Defendants failure to review its contract. (Docket Nos. 60-14, 65-2, 91.) Because it has abandoned its initial allegation, this Court will not address it in full. However, for the sake of thoroughness, it should be noted that in either case, Defendants' actions withstand rational basis review.

U.S. 360, 370, 108 S. Ct. 1184, 1192, 99 L. Ed. 2d 380 (1988); Schweiker v. Wilson, 450 U.S. 221, 235, 101 S. Ct. 1074, 1083, 67 L. Ed. 2d 186 (1981) (finding that governmental regulation will be upheld under rational basis scrutiny "[a]s long as the classificatory scheme chosen . . . rationally advances a reasonable and identifiable governmental objective").

Such a rational basis review "allows legislatures to act incrementally and to pass laws that are over (and under) inclusive without violating" the Equal Protection Clause. Hayden v. Paterson, 594 F.3d 150, 171 (2d Cir. 2010).

As an initial matter, "there can be no question that generating budget savings, particularly during a budget crisis, is a legitimate governmental purpose." Levine v. Paterson, No. 110 Civ. 1007, 2011 WL 4593739, at * 4 (N.D.N.Y. Sept. 30, 2011) (quoting Dinkins, 807 F. Supp. at 966); see also F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) ("A legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.) Here, the Second Circuit has already confirmed that the Defendants acted pursuant to a fiscal crisis and that its actions were legitimate. See Buffalo Teachers Federation, 464 F.3d at 368 ("It is not disputed that Buffalo was suffering at the time, and continues to suffer, a fiscal crisis."). Thus, Defendants have satisfied this prong of the equal protection test.

Local 264 can still maintain its claim if it can demonstrate that Defendants' distinction between the manner that Defendants reviewed its contract and the way it reviewed other contracts was "so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that [its] actions were irrational."

8

Gregory v. Ashcroft, 501 U.S. 452, 471, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991) (quoting Vance v. Bradley, 440 U.S. 97, 99, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979). This is the second prong of the Equal Protection test.

Local 264, however, fails to raise any triable issue of fact that could lead to the conclusion that the Defendants actions were irrational.

In April of 2004, the BFSA discovered that for the 2004-05 fiscal year Buffalo projected a budget gap $20 million greater than the $30 million gap previously estimated. Buffalo Teachers Federation, 464 F.3d at 366. The Control Board was further troubled by the estimate that the projected City budget gap for the next four years would exceed $250 million. Id. Therefore, the Control Board resolved that "effective immediately, there shall be a freeze with respect to all wages . . . for all employees of the City[, which] shall apply to prevent and prohibit any increase in wage rates." Id. Because the members of Local 264 were city employees, the wage freeze immediately applied to them, and the Control Board undertook no further review of its contract.

It bears repeating that Local 264 challenges the simple act of failing to *review* its contract. Defendants, however, were already aware of Local 264's contract. (Def's State. ¶ 123.) So much so that its understanding of the contract and its contents – which provided for wage increases for City employees – motivated Defendants to enact the wage freeze in the first place. Simply put, it did not need to review Local 264's contract. As such, it cannot be said that its actions were irrational; instead, in light of the on-going fiscal crisis, the contrary is true.

Local 264 contends that there is evidence in the record supporting a claim that Defendants were not motivated to curb spending, but instead hoped to retaliate against the

9

American Federation of State, County and Municipal Employees ("AFSCME"), Local 264 for an arbitration award AFSCME received shortly before Defendants enacted the wage freeze.[7] In support of this contention, Local 264 points out that during the hearing in which Defendants adopted the wage freeze, they also asked about the effects of the arbitration decision and noted the cost to the City. It also notes that Defendant Thomas Baker invited the public to the meeting regarding the wage freeze, but subsequently refused Plaintiffs entrance. It argues this proves that Defendants acted out of animus and that such animus can be grounds for an Equal Protection claim.[8]

"Government action . . . violates principles of equal protection 'if it was motivated by discriminatory animus and its application results in a discriminatory effect.'" Jana-Rock Const., Inc. v. New York State Dept. of Econ. Dev., 438 F.3d 195, 204 (2d Cir. 2006) (quoting Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S. Ct. 1064, 30 L. Ed. 220 (1886)).

For the following reasons, Local 264 has failed to show such animus.

First, the Second Circuit has already found that the Control Board acted for fiscal, not retaliatory reasons:

> Indeed the [Control] Board imposed the freeze only after other alternatives had been considered and tried . . . the City had already taken other more drastic measures including school

---

[7]AFSCME, Local 264 is technically a party to this action but the Court has been informed that its claims have been settled. It is a separate entity from the International Brotherhood of Teamsters, Local 264, the remaining plaintiff.

[8]The only legal authority Local 264 cites in support of its proposition that a plaintiff can sustain an Equal Protection claim through a showing of animus is Harlen Associates. v. Incorporated Village of Tineola, 273 F.3d 494 (2d Cir. 2001). There, the Second Circuit discussed the Equal Protection Clause in a different context and determined that it did not need to conclude whether proof of animus was necessary to withstand summary judgment. See id. ("We need not decide which reading [whether animus is required] is the correct one in order to resolve this case, as [the plaintiff's claim] fails even if no showing of animus is required."). It does not stand for the proposition, as Local 264 characterizes it, that animus alone is enough to state an Equal Protection claim in this context.

>closings and layoffs; in the four years prior to the wage freeze Buffalo eliminated 800 teaching and 250 teaching assistant positions. Only after these more drastic steps were taken and a finding that the freeze was essential was made, did the [Control Board] institute the wage freeze.

Buffalo Teachers Federation, 464 F.3d at 371.

Second, merely because the arbitration award was mentioned in connection with the wage freeze does not mean, *ipso facto*, that Defendants goal was to retaliate against the unions. Rather, Defendants note that the topic of the arbitration award was broached because it had a significant impact on the City's budget. This is a set of facts that reasonably may justify the Control Board's actions, see McGowan v. Maryland, 366 U.S. 420, 426, 81 S. Ct. 1101, 6 L. Ed 2d 393 (1961), and it is not "so unrelated" to achieving the goal of fiscal order that it can be called "irrational." See Gregory, 501 U.S. at 471.

Finally, Baker's action, refusing to admit Plaintiffs to a meeting, does not raise a material issue on the existence of animus in enacting the wage freeze. As a result, Defendants' motion for summary judgment regarding Local 264's Equal Protection claim is granted and Local 264's motion is denied.

**D.    Due Process**

Local 264 also contends that Defendants' actions deprived it of its rights under the Due Process Clause of the United States Constitution. Specifically, it argues that Defendants violated its procedural due process rights by failing to afford it notice and an opportunity to be heard before imposing the wage freeze, which, it argues, infringed on its protected property interest.

Defendants argue that their actions did not implicate the Due Process Clause because they were legislative in nature. Regardless, Defendants argue, they adequately

11

satisfied all the requirements of due process.

"The Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L . Ed. 2d 494 (1985). An essential principle of due process is that such a deprivation "be preceded by notice and opportunity for [a] hearing [that is] appropriate to the nature of the case" Id. at 542 (quotation omitted). The Supreme Court has stressed that the hearing should be conducted at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Generally, employees have a property interest in continuing public employment where, by statute or contract, the state is barred from terminating the employment relationship without cause. See, e.g., Loudermill, 470 U.S. at 538. But not all employment disputes raise constitutional concerns. See Costello v. Town of Fairfield, 811 F.2d 782 (2d Cir.1987); Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 30 (2d Cir.1994) ("[A]lthough a public contract can confer a protectable benefit, not every contract does so.") (Internal citations omitted). Indeed, the Second Circuit has specifically limited the types of rights that are entitled to due process protection. In S&D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir.1988), the Second Circuit explained the difference:

> An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as "property" entitled to procedural due process protection. Goldberg v. Kelly[, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970),] involved entitlement to welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival. Board of Regents v. Roth, *supra*, and Perry v. Sindermann, [408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570

> (1972),] concerned claims to tenured status in public employment. In these contexts, the Due Process Clause is invoked to protect something more than an ordinary contractual right. Rather, procedural protection is sought in connection with a state's revocation of a status, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.

Costello, 811 F.2d 782, presents a clear case of an interest that is not protected. There, a group of retired police officers alleged that their employer, the town government, violated their constitutional rights when it denied them contractual pension increases without due process. The Second Circuit dismissed the complaint because the plaintiffs had not been denied the entirety of their benefits, but merely disputed the lack of an increase to those benefits. The court placed some emphasis on the fact that the alleged right to a wage increase was not clear from the face of the contract, which is unlike the present case where there is no dispute over this issue. However, the following year, the Second Circuit resolved any doubt about the applicability of Costello to this case, characterizing its holding as "declin[ing] to recognize a constitutionally protected property interest in a claim for an alleged contractual increase" provided for in a collective bargaining agreement. See S&D Maintenance Co., 844 F.2d at 967.

Local 264, like the plaintiffs in Costello, contend that it has a protected interest in contractual wage and pension increases. In support of this contention Local 264 cites Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991), in which the court noted that public employees must be afforded due process if their employment is *terminated*. But *increases* in wage, salary or benefits are a different matter. As distinguished by the Second

13

Circuit in S&D Maintenance Co. and Costello, such an interest in wage increases, as opposed to an interest in employment as a whole, is not protected for the purposes of the Due Process Clause. See Henneberger v. Cnty. of Nassau, 465 F. Supp 176, 193 (E.D.N.Y. 2006) ("The Court finds that the denial of additional benefits allegedly due to plaintiffs under the CBA [Collective Bargaining Agreement] does not constitute the kind of deprivation that may give rise to a due process claim in the Second Circuit."); Danese v. Knox, 827 F. Supp. 185 (S.D.N.Y. 1993) ("[I]n this Court's view[,] the authorities cited above [Costello, S&D Maintenance, and others] suggest that the proposed plaintiff class' right under the collective bargaining agreement to line of duty sick leave is not a 'property' interest for due process purposes.").

Further, because Local 264 has not demonstrated that the wage freeze will result in extreme poverty or the loss of jobs, no reasonable jury could conclude that the deprivation suffered by Local 264 is such that it could characterized as "extreme dependance" under S&D Maintenance Co. See Henneberger, 465 F. Supp. 2d. at 193. Consequently, Local 264 cannot maintain a due process claim for alleged lack of process relating to the wage freeze. Defendants' motion for summary judgment is therefore granted, while Local 264's motion is denied.

**D.    State Claims**

Local 264 also brings claims under New York State law and the New York State Constitution. However, having disposed of all federal claims falling within this Court's original jurisdiction, this Court finds it appropriate to decline to exercise supplemental jurisdiction over Local 264's state claims. See 28 U.S.C. § 1367(c)(3). The United States Supreme Court has instructed that courts should ordinarily decline to exercise

14

supplemental jurisdiction in the absence of federal claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."). Therefore, Local 264's state claims are dismissed.

## IV. CONCLUSION

For the reasons discussed above, this Court finds that Defendants did not violate Local 264's rights under the Contract, Takings, Equal Protection, or Due Process Clauses. Consequently, Defendants' Motion for Summary Judgment is granted, while Local 264's motion is denied. Further, Local 264's state claims are dismissed.

## V. ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' Motion for Summary Judgment (Docket

No. 41) is DENIED.

FURTHER, that Defendants' Motion for Summary Judgment (Docket No. 48) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   December 15, 2011
         Buffalo, New York

                                                    /s/William M. Skretny
                                                   WILLIAM M. SKRETNY
                                                       Chief Judge
                                                United States District Court